UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | | |
|---|---|---|
| | X | |
| ASSOCIATED PRESS,<br>450 West 33rd Street<br>New York, NY 10001 | :<br>:<br>:<br>: | Index No. 06 CV 1939 |
| Plaintiff, | :<br>: | |
| - against - | :<br>: | ECF CASE |
| UNITED STATES DEPARTMENT OF<br>DEFENSE,<br>1000 Defense Pentagon<br>Washington, DC 20301 | :<br>:<br>:<br>:<br>: | COMPLAINT |
| Defendant. | :<br>X | |

Plaintiff, The Associated Press ("AP"), by its undersigned attorneys, alleges:

## INTRODUCTION

1.      This is an action under the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552, *et seq.*, brought by the nation's largest newsgathering organization to compel

access to records pertaining to the detention of hundreds of persons at the U.S. Naval Base at

Guantanamo Bay, Cuba ("Guantanamo").  Through this lawsuit, AP seeks access to

documents sufficient to identify all past and present detainees held at Guantanamo, many of

whose identities have never been revealed publicly by the U.S. government.  Obtaining

copies of these documents is a matter of concern to the AP in connection with its continuing

reporting on major constitutional, foreign policy and public policy issues presented by events

at Guantanamo.

Dockets.Justia.com

2.      On January 18, 2006, AP submitted to DOD a specific FOIA request seeking to update the release of hearing transcripts from proceedings held at Guantanamo since June 2005, and requesting documents sufficient to identify each person who has been detained at Guantanamo. This information has not previously been released, and it is critical to AP's ability to use and interpret transcripts of certain proceedings involving some detainees that have been made available by DOD. AP requested expedited processing of the request given the timely news value of the information sought.

3.      Despite two ongoing lawsuits by AP against the DOD concerning its improper refusal to release identifying information about the Guantanamo detainees, DOD has not responded to AP's January 18, 2006 FOIA request. On inquiry from AP, DOD has been unable or unwilling to state when, or whether, it will provide the detainee identifying information requested.

4.      AP now seeks declaratory, injunctive and other relief to enforce its statutory right to inspect documents containing basic information about the persons who have been confined at Guantanamo since the prison camp's inception. Given the significant public interest in understanding the actions taken by the U.S. Government with respect to the individuals held at Guantanamo Bay, AP seeks expeditious treatment of this Complaint pursuant to 28 U.S.C. § 1657.

**THE PARTIES**

5.      Plaintiff AP is a not-for-profit membership corporation organized under the laws of the State of New York, with its headquarters located at 450 West 33rd Street, New York, New York. AP provides news to more than 15,000 news outlets every day. Its members and subscribers include newspapers, magazines, broadcasters, cable

2

television operators and Internet content providers throughout the United States and around the world.

6.      Defendant Department of Defense is a department within the executive branch of the United States government. Defendant is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1).

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action and personal jurisdiction over defendant pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii). This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-06.

8.      Venue is premised on plaintiff's place of business and is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## FACTS

### The Guantanamo Bay Detention Controversy

9.      Following the attacks of September 11, 2001, the United States government captured and took custody of many "enemy combatants" during military operations in Afghanistan against al-Qaeda and the Taliban regime. The government also detained individuals in other countries whom it considers to be enemy combatants due to perceived connections to al-Qaeda and other terrorist groups.

10.     On information and belief, more than 750 detainees have been held at one time or another at Guantanamo. At least 267 of these detainees have been transferred out, and some 490 remain confined there today.

11.    The United States Government's detention of these persons at Guantanamo Bay has generated widespread controversy since early 2002. Reports of complaints ranging from constitutional violations of United States citizens' rights, to violations of international law, to claims of inhumane and cruel treatment have been published by major news outlets.

12.    In late June 2004, the United States Supreme Court issued decisions in *Rasul v. Bush*, 124 S. Ct. 2686 (2004) and *Hamdi v. Rumsfeld*, 124 S. Ct. 2633 (2004). In these cases, the Court held that "due process demands that a citizen held in the United States as an enemy combatant be given a meaningful opportunity to contest the factual basis for that detention before a neutral decisionmaker," *Hamdi*, 124 S. Ct. at 2634, and that the United States courts have jurisdiction to hear challenges to the legality of detention of foreign nationals held at Guantanamo, *Rasul*, 124 S. Ct. at 2698.

13.    In the wake of these adverse decisions, DOD implemented a two-stage procedural process at Guantanamo that it contends adequately extends due process to the detainees. In the first stage, Combatant Status Review Tribunals ("CSRTs") were convened to determine whether each detainee was actually an "enemy combatant." In the second stage, which is ongoing, Administrative Review Boards ("ARBs") consider annually whether each enemy combatant should be released, transferred, or continue to be detained, primarily based on whether the detainee poses a continuing risk to the security of the United States.

14.    A steady stream of new questions regarding DOD's handling of the detainees has continued since these procedures were implemented. On January 31, 2005, the United States District Court for the District of Columbia held, in a consolidated case addressing the habeas corpus petitions of more than sixty Guantanamo detainees, that eleven

(11) detainees had stated claims that the procedures employed by DOD to review their status

were insufficient, resulting in a violation of due process rights, and that the Geneva

Conventions should be applied to some detainees. *In re Guantanamo Detainee Cases*, 355 F.

Supp. 2d 443, 481 (D.D.C. 2005).

      15.    Dozens of additional Guantanamo detainees have since filed petitions

for habeas corpus in federal district court asserting claims of abuse and mistreatment, as well

as concerns about the government "rendering" them to Middle East allies known to torture

prisoners. In some of these cases, the courts granted the detainees' motions to require the

government to give them and their counsel notice before transferring them from Guantanamo

to other countries. *See Kurnaz v. Bush*, Nos. 04-1135 & 05-0392, 2005 WL 839542 (D.D.C.

Apr. 12, 2005); *Al-Marri v. Bush*, No. 04-2035, 2005 WL 774843 (D.D.C. Apr. 4, 2005);

*Abdah v. Bush*, No. 04-1254, 2005 WL 711814 (D.D.C. Mar. 29, 2005). In other cases, the

courts declined the very same request. *See O.K. v. Bush*, 377 F. Supp. 2d 102 (D.D.C. 2005);

*Al-Anazi v. Bush*, 370 F. Supp. 2d 188 (D.D.C. 2005); *Almurbati v. Bush*, 366 F. Supp. 2d 72

(D.D.C. 2005).

      16.    The public has an intense and legitimate interest in knowing the

identities of detainees held at Guantanamo. Amnesty International, Human Rights Watch,

the bipartisan Constitution Project, members of both parties of the United States Congress,

influential policymakers and others have called for an independent investigation into the

treatment of these detainees.

      17.    On November 8, 2005, the United States Senate defeated an

amendment to a military spending bill that would have established an independent

commission on the United States' treatment of the detainees.

18.    Two days later, on November 10, 2005, the United States Senate

voted, with no hearings and little debate, to deny habeas corpus rights to Guantanamo

detainees. The Detainee Treatment Act of 2005, which was signed into law on December 30,

2005 by President Bush, eliminates federal court jurisdiction to hear or consider applications

for writs of habeas corpus and other actions by or on behalf of the Guantanamo detainees

"relating to any aspect of the detention by the Department of Defense." The law provides

that, henceforth, the only judicial review of a Guantanamo prisoner's detention shall be a

review by the United States Court of Appeals for the District of Columbia Circuit of the

procedures used in determining a prisoner's status as an "enemy combatant." The law further

provides that the court loses even that jurisdiction "upon the release of [the detainee] from

the custody of the Department of Defense."

**AP's Ongoing Lawsuits For Access to**
**<u>Information Concerning the Guantanamo Detainees</u>**

19.    AP previously has filed two related FOIA lawsuits against DOD

arising from its improper refusal to provide information about the treatment of the

Guantanamo detainees. *Associated Press v. United States Department of Defense*, Nos. 05

Civ. 5468 & 3941 (JSR) (S.D.N.Y.). In these lawsuits AP has sought, *inter alia*, documents

related to CSRT and ARB proceedings, and documents relating to allegations of detainee

abuse.

20.    In these lawsuits, DOD was ordered to release to AP, *inter alia*, copies

of transcripts from CSRT and ARB proceedings without removing information identifying

the detainees, including their names, nationalities and similar details. Pursuant to the court's

order, DOD released the first batch of unredacted documents to AP on March 3, 2006, and a
second batch is scheduled to be released during the week of March 13, 2006.

       21.     Not all transcripts provided to AP refer to the subject detainee by his
name; many simply refer to the subject of the proceeding as "detainee" throughout the
transcript. All transcripts contain an Internment Serial Number ("ISN") uniquely identifying
the subject of the proceeding, but without a list identifying the ISN number of each detainee,
it is often not possible to determine to whom a transcript relates.

       22.     On information and belief CSRT transcripts exist for only about 317 of
the detainees; ARB transcripts exist only for about 439 detainees. Many detainees were not
the subject of either a CSRT or an ARB proceeding.

## AP's Request for Information Necessary to Identify All
## Detainees and to Match Detainees to CSRT and ARB Transcripts

       23.     On January 18, 2006, AP submitted a narrow and specific FOIA
request to DOD seeking information sufficient to identify all detainees who are now or have
been held at Guantanamo. AP requested, *inter alia*:

- "Documents sufficient to reveal the name, nationality, home town, age,
and dates of confinement of each detainee who, since September 11,
2001, has been confined for any period of time at [Guantanamo]"; and

- "Any other relevant identifying information about the detainees in your
possession."

(A true and correct copy of AP's request to DOD is annexed as Exhibit A.)

       24.     In order to be able to match CSRT and ARB transcripts with specific
detainees, AP notified DOD that it particularly sought the ISN number for each detainee as
part of the "other relevant identifying information" being requested.

25.     The identifying and demographic information sought for all persons detained at Guantanamo has independent news value. Without it, for example, the public does not know who was released from Guantanamo before the CSRT proceedings were instituted in 2004, how long each detainee was or has been detained, and where the detainees are from.

26.     In making its request, AP stressed that the records sought were "of timely news value" and needed to report about "this administration's war against terrorism and its treatment of people detained or convicted on terrorism-related charges, a continuing news story of great interest" internationally and within the United States. Pursuant to 5 U.S.C. § 552(a)(6)(E), AP asked DOD to provide expedited treatment of its FOIA request.

27.     DOD did not provide any of the documents to AP in response to its January 18, 2006 request and did not otherwise respond to the request within the time required by law. 5 U.S.C. § 552(a)(6)(A)(i). As of the date of the filing of this Complaint, DOD has failed to respond to the request at all, and upon inquiry from AP was unable or unwilling to state when, or whether, it will provide the detainee identifying information requested.

28.     AP has exhausted its administrative remedies.

**FIRST CAUSE OF ACTION**
(Violation of FOIA for failing to expedite AP's request)

29.     AP repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

30.     Defendant's failure to expedite the processing of AP's January 18, 2006 request violates FOIA, 5 U.S.C. § 552(a)(6)(E), and defendant's own regulations promulgated thereunder.

### SECOND CAUSE OF ACTION
(Violation of FOIA for failure to make records available in response to AP's request)

31.     AP repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

32.     Defendant's failure to make promptly available and to release in timely fashion the documents requested by AP in its January 18, 2006 request violates FOIA, 5 U.S.C. § 552(a)(3)(A).

### RELIEF REQUESTED

**WHEREFORE**, AP respectfully prays that this Court:

a.     Expedite consideration of this Complaint pursuant to 28 U.S.C. § 1657;

b.     Declare that the following records must be disclosed by defendant in their entirety (both in their English and non-English forms where applicable):

  i.   Copies of documents sufficient to reveal the name, nationality, home town, age, and dates of confinement of each detainee who, since September 11, 2001, has been confined for any period of time at Guantanamo; and

  ii.  Copies of any other identifying information about the detainees, including without limitation their ISN assigned by DOD;

c.     Enjoin defendant immediately and expeditiously to provide to AP copies of the requested documents related to the Guantanamo detentions;

d.     Award AP the costs of this proceeding, including reasonable attorneys' fees and costs; and

e.     Grant such other and further relief as the Court deems just and proper.

Dated:  March 13, 2006
        New York, NY

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.


By: _____
    David A. Schulz (DS-3180)
    Ashley I. Kissinger
    230 Park Avenue, Suite 1160
    New York, NY 10169
    t: (212) 850-6100
    f: (212) 850-6299

David H. Tomlin
THE ASSOCIATED PRESS
450 West 33rd Street
New York, NY 10001

*Attorneys for The Associated Press*