Associated Press v. United States Department of Defense                                                                                                    Doc. 8 Att. 2

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ASSOCIATED PRESS,

 4              Plaintiff,

 5         v.                              06 Civ. 1939 (JSR)

 6   UNITED STATES DEPARTMENT OF
     DEFENSE,
 7                                         Conference
                Defendant.
 8
     ------------------------------x
 9                                         New York, N.Y.
                                           April 3, 2006
10                                         2:30 p.m.
     Before:
11
              HON. JED S. RAKOFF
12
                                           District Judge
13

14            APPEARANCES

15
     LEVINE, SULLIVAN, KOCH & SCHULZ LLP
16   Attorneys for Plaintiff
          230 Park Avenue, Suite 1160
17        New York, New York  101069
          (212) 850-6100
18   BY:  DAVID A. SCHULZ, ESQ.

19


20   MICHAEL J. GARCIA
     United States Attorney for the
21   Southern District of New York
          86 Chambers Street
22        New York, New York  10007
     SARAH SHEIVE NORMAND
23        Assistant United States Attorney

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

```
 1                (Case called)
 2          MR. SCHULZ:  Good afternoon, Judge.  Dave Schulz for
 3   the Associated Press.
 4          MS. NORMAND:  Good afternoon, your Honor.  Sarah
 5   Normand for the DOJ.
 6          THE COURT:  Good afternoon.  Before we take up the
 7   scheduling in this case, I want to schedule oral argument in
 8   what I will call AP II, which I guess is 05 Civ. 5468.  I
 9   thought I might not need oral argument, but now that I have had
10   a chance to get into the papers, I think oral argument would be
11   helpful.
12          How about sometime next week.  Any particular date
13   that is bad for either counsel next week?
14          MR. SCHULZ:  I believe, Judge, that for myself I am
15   OK.  My calendar is downstairs, but I think that that is an
16   open week at the moment.
17          THE COURT:  I sort of like the way we have now worked
18   it out so everyone's calendar is always taken from them when
19   they come in, because they are electronic.  That way when I ask
20   this question, counsel are unable to say they are unavailable.
21          How about the government?
22          MS. NORMAND:  I do it the old-fashioned way.
23          THE COURT:  There you go.  You have me at your mercy.
24          MS. NORMAND:  Because of a hearing that I have this
25   Friday, it would be my preference if we could do it Wednesday,
```

```
 1   Thursday, or Friday of next week, to give me some time to
 2   prepare.
 3               THE COURT:  That's fine.  How about 2 o'clock next
 4   Wednesday.  That would be April 12th at 2 p.m.
 5               Now, in terms of today's matter, which for the record
 6   is 06 Civ. 1939, do you have a case management plan?  These
 7   cases don't really lend themselves to my normal case management
 8   plan.  Do you have a proposal for scheduling?
 9               MR. SCHULZ:  I will go first just to lay the landscape
10   out.  We have been discussing a way to resolve this
11   efficiently.  AP's, my client's, concern is to do this as
12   expeditiously as possible, of course.
13               Essentially, what we are fighting over, Judge, the
14   request that was underlying this litigation asked for a broader
15   group of things.  The thing that is being litigated
16   specifically is identifying information with respect to all of
17   the detainees, which is important for reasons we can go into
18   later.  The documents we have gotten don't give us a full road
19   map without something that links names and numbers, among other
20   things.
21               We broadly asked for all identifying information their
22   possession, documents sufficient to provide the identifying
23   information.  We have consulted with the government in terms of
24   what they maintain and how they maintain it.  I think there are
25   essentially six categories of information the government is
```

1   prepared to search for and two categories that my client would
2   like that they claim is too burdensome to search for.
3            What they have agreed to search for are names, date of
4   birth, place of birth, citizenship, the INS number that they
5   have assigned to each one at Guantanamo, and a photograph.  As
6   I understand the government's position, they haven't yet agreed
7   they will make all that available.  They want to decide whether
8   it is subject to some exemption.  But they are at least willing
9   to search for that.
10           There are two additional categories that we have asked
11  for that my client is unwilling to voluntarily relinquish.
12  There are some that we have given up on.  One is the weight of
13  the detainees, which is important to my client because of
14  hunger strikes and other things that have been going on.  To
15  the extent it has been recorded, they would like the weight.
16           The last category is religion of each of the
17  detainees.  As to those two categories, it is my understanding
18  that the government is, at least at this point, unwilling to
19  search.  I am not quite sure I got it right.
20           MS. NORMAND:  I can clarify that point.
21           THE COURT:  Yes.
22           MS. NORMAND:  Your Honor, there is a database that is
23  maintained in which the first categories, several categories,
24  of information is more readily accessible.  It isn't the type
25  of database where you could simply indicate several fields and

1  it would print out a document which contains that.  DoD would
2  still have to go through it detainee by detainee in order to
3  compile the information.
4       Nevertheless, that information is more readily
5  accessible from the database than the information about
6  religion or weight.  That would have to be gathered through
7  other documents.  In the case of weight, it most likely would
8  have to be gathered through medical records, which are
9  extremely voluminous and obviously would require a hand search
10 detainee by detainee.
11      Religion, it is not yet clear what documents that
12 information would be contained within, but that would also
13 require a hand search.
14      DoD's position is not that it will not search for that
15 information.  However, the schedule that we have proposed for
16 producing the information in the other categories, and that is
17 compiling it and producing it, would not include those other
18 categories of information, the religion and weight, because
19 that would require further search.  And the schedule that we
20 have proposed has been developed based on essentially the
21 compilation of information that is more readily accessible or
22 is readily accessible from the database.
23      We would propose to produce the earlier categories of
24 information by certain dates and then thereafter to commence
25 the search.

1              THE COURT:  When you say produce, are you willing to
2     produce all those earlier categories?
3              MS. NORMAND:  Mr. Schulz is right, we are reserving
4     the right to assert whatever exemptions may apply to the
5     earlier categories of information.  Those decisions haven't
6     been made.
7              THE COURT:  So you are saying this is a date by which
8     you will have gathered those categories?
9              MS. NORMAND:  Correct.
10             THE COURT:  What does that do?
11             MS. NORMAND:  I'm sorry, your Honor.  There is sort of
12    actually a rolling production that we have proposed.  First, we
13    have proposed to produce by April 17th a list of detainee
14    names, ISNs, which is the internee serial number, and
15    citizenship of the detainees who have gone through the CSRT/ARB
16    process.  This I think responds partly to --
17             THE COURT:  There again, I don't want to leave this
18    ambiguous.  Are you saying you will produce them by that date?
19    Are you saying that you will by that date indicate what
20    exemptions, if any, you are claiming with respect to them?  You
21    keep using the term "produce," but I understood from what you
22    said a minute ago that you are not necessarily producing this.
23             MS. NORMAND:  We would produce on that date the
24    information that I indicated unless there is an exemption that
25    applies to any piece of information therein.

```
 1              THE COURT:  You are not claiming across-the-board
 2   exemption as to any of those categories?
 3              MS. NORMAND:  Not the three that I have indicate just
 4   now, that's right.
 5              THE COURT:  All right.  So it would have to be some
 6   more particularized exemption relating to a particular
 7   individual, for example?
 8              MS. NORMAND:  That's right, generally speaking, yes.
 9              THE COURT:  Go ahead.
10              MS. NORMAND:  We would then propose to produce by May
11   15th information regarding the universe of detainees at
12   Guantanamo the following categories of information:  Names,
13   ISNs, citizenship, date of birth, place of birth, and
14   photographs.  Those categories of information are more readily
15   accessible from the database and that is why those categories
16   have been proposed.
17              THE COURT:  Right.
18              MS. NORMAND:  As to the category of photographs, a
19   determination has not yet been made as to whether a categorical
20   assertion of exemption will be made.
21              THE COURT:  So it will be all on May 15th with respect
22   to those who had not previously been produced, you will be
23   producing names, serial numbers, and citizenship unless, again,
24   there were some particularized specific exception as to
25   particular items.
```

1           MS. NORMAND:  Right.

2           THE COURT:  You will also for the entire population be

3   producing date of birth and place of birth unless there were

4   particularized objections.  And you might or might not be

5   producing photographs, depending on whether there was a

6   categorical exemption?

7           MS. NORMAND:  That's right, your Honor.  We have also

8   proposed to advise Mr. Schulz by May 1st whether, at his

9   request -- that is, he requested that we give him notice

10  earlier than the date of production whether there would be a

11  categorical search, so that a briefing schedule could be put

12  together.

13          THE COURT:  The only one that would fall into that

14  category so far is the photographs?

15          MS. NORMAND:  Correct.  May 1st is the day that we

16  have proposed to give that notice.

17          THE COURT:  What about the weight and religion?  I

18  must say I am surprised that religion is not something that has

19  been part of your database, since I would have thought that is

20  an issue that you would have to regularly deal with in the

21  manner in which you handle detainees.  But if it hasn't been

22  done, it hasn't been done.

23          MS. NORMAND:  It may be that the information is

24  contained in the database somewhere.  But in the manner in

25  which biographical information is collected for detainees, it

1   is not one of the fields.  That is as it has been explained to
2   me.
3          THE COURT:  What is your proposal as to those two
4   categories?
5          MS. NORMAND:  We don't have a specific proposal, your
6   Honor.  Essentially, the schedule that we have proposed as to
7   the other categories is going to be difficult from DoD's point
8   of view, because the request was required to be redirected to
9   USSOUTHCOM, which is the parent command of the joint task force
10  at Guantanamo.
11         SOUTHCOM, who maintains the information is currently
12  working on several FOIA requests including some that are
13  subject to court order.  There is one, for example, in the
14  District of Massachusetts on which the agency has already
15  expended many thousand hours and which has a deadline
16  approaching, and they are going to be working on those
17  documents in the next month.
18         Nevertheless, the agency is going to dedicate staff to
19  accomplish this particular schedule that I have set out.  What
20  we propose to do is to meet that schedule and then to begin
21  trying to compile the additional information.
22         THE COURT:  There is no reason, is there, why you
23  couldn't let me know by May 1st whether there was a categorical
24  exception to weight and religion?
25         MS. NORMAND:  That's correct, your Honor, and in fact

```
 1   we have proposed that.
 2           THE COURT:  Is this acceptable to plaintiff's counsel?
 3           MR. SCHULZ:  Obviously, Judge, we would like to get
 4   these as soon as we can.  We just heard the May 1st date about
 5   20 minutes ago.  Our goal when we heard these dates initially
 6   was if we can get them by that date, good.  Then, when we
 7   realized there was a string attached, that they weren't
 8   promising to give us the stuff, just to search for it, we
 9   started the negotiation on how we could resolve it.
10           THE COURT:  They are promising more than that.  I will
11   repeat it one last time to be absolutely sure.  As I understand
12   the proposal, it is as follows:
13           No categorical exceptions or exemptions are being
14   asserted except possibly as to photographs, religion, and
15   weight.  Then, under the proposal they will let you, and
16   presumably me, know by May 1st whether they are asserting any
17   categorical exemption as to any or all of those three.
18           With respect to the other matters, while they reserve
19   their right to offer particularized objections to the case of
20   particular individuals or particular items, they are not going
21   to be asserting a categorical objection.  Therefore, I think
22   the reasonable expectation is that they will be producing all
23   or the great bulk of this material as follows:
24           On April 17th, only two weeks from now, they will
25   produce as to those people who fall into the category that has
```

1   about 20 letters or numbers after it, the acronym I can't even
2   try to replicate, but anyway that category, they will produce
3   names, serial number, and citizenship.
4            Then, four weeks later, on May 15th, they will produce
5   first of all those three categories as to all the other
6   detainees and then, secondly, as to the entire population date
7   of birth, place of birth, and to the extent that they do not
8   assert a categorical exception of photographs, the photographs.
9   Right?  Do I have that all correct?
10           MS. NORMAND:  That's right, your Honor.
11           THE COURT:  I have to say I think that that is a
12  reasonable proposal.  But let me find out whether you agree or
13  disagree.
14           MR. SCHULZ:  My understanding was as your Honor has
15  determined where we are as of about 20 minutes ago.  The whole
16  notion of doing the categorical things sooner than May 17th
17  just develop a few minutes ago.  Our question would be whether
18  there is not some way to move that up even more.
19           THE COURT:  I understand what you are saying.  What I
20  would say is this.  I think it is not unreasonable, given the
21  sensitivities of the situation, to give them, in effect, a
22  month to decide whether they are going to assert categorical
23  exceptions.  What I do think we ought to do is set now a
24  briefing schedule that of course could be obviated if
25  everything is produced.  But if it is not, we will have a

1    briefing schedule right in place.
2           We can put the burden on the government to submit on
3    May 1st a statement of any categories that they are taking
4    categorical exception to and the reasons therefor, the legal
5    justification for asserting those exemptions.  At that stage it
6    might be fairly bare bones, just the basic law.
7           Then, how quickly, Mr. Schulz, would you like to put
8    in what would be two different things:  One is your answering
9    papers or opposition papers to those exemptions, and also I
10   think at the same time I would like to get from you, to the
11   extent that they have asserted any particularized exemptions in
12   the April 17th production, we might as well get those, because
13   that is going to impact the May 15 production as well.
14          My thought would be that these could be two separate
15   papers, if you like, or one giant paper, but something that
16   would both respond to their categorical exceptions and also
17   make any assertions you want to make about particularized
18   exemptions.  This would only be particularized exemptions from
19   April 17th.  But the reason it makes sense to get them going is
20   because undoubtedly the similar issues, if they arise at all,
21   would arise on the May 15th production.  Are you with me?
22          All right.  What date would you propose?
23          MR. SCHULZ:  I gather that what we would be getting on
24   May 1st is a statement of the categorical exemption with some
25   explanation of the basis.

```
 1              THE COURT:  Yes.  Enough so that you can respond.  I
 2   don't see them as having to put in lengthy briefing at that
 3   point, because the issue won't have fully been joined really
 4   until you put in your answering papers.  I am going to give
 5   them a reply brief on this.
 6              MR. SCHULZ:  I guess I would like maybe a little more
 7   than a week or so.  Maybe the 10th.
 8              THE COURT:  All right.  May 10th.  At that point I
 9   would look to the government to be putting in both a reply
10   paper on the categorical exceptions and an answering paper on
11   the specific objections that had been challenged.  How quickly
12   can the government do that?
13              MS. NORMAND:  Your Honor, we would request a week for
14   a reply.
15              THE COURT:  That's fine.
16              MS. NORMAND:  If I could be heard as to the May 1st
17   date.
18              THE COURT:  Yes.
19              MS. NORMAND:  I have a personal situation.  My mother
20   is going to be having some surgery on May 1st.  I will be out
21   of the office for a few days.  I can try to submit papers the
22   Friday before.
23              THE COURT:  That would be great.
24              MS. NORMAND:  I just want to raise it on the record.
25   If I am unable to do that, I may request --
```

```
 1                THE COURT:  Then we will move everything whatever
 2    short period is necessary.
 3                MS. NORMAND:  Thank you, your Honor.
 4                THE COURT:  You are saying you will try to get it in
 5    on April 28th.
 6                MS. NORMAND:  I will do my best, only because I will
 7    be out of the office entirely from basically May 1st to May
 8    3rd.
 9                THE COURT:  So it will be April 28th.  If not, we will
10    have to move everything back a little bit.
11                MS. NORMAND:  Thank you, your Honor.
12                THE COURT:  Assuming the schedule we have just set, it
13    will be May 17th for your answering papers.  Then, what I would
14    propose is oral argument on May 24th at a time I will give you
15    in a moment.  I would expect on May 24th we might -- let's do
16    it sooner than that.
17                Let's do this.  Assuming that the government can get
18    its papers in on the 28th, can I push you back then, Mr.
19    Schulz, for your papers on May 8th, have the government's
20    answering papers on May 15th, and then we could do oral
21    argument on May 19th.  The reason for that is I am out the
22    entire week after that.  I would rather get this done first.
23    May 19th at 2 p.m.  If it doesn't work out on the 28th, then I
24    think everything is going to move approximately a week to ten
25    days.
```

```
 1              On the 19th we could also deal orally with
 2   particularized objections that have been raised to the
 3   production of the 15th that are essentially legally identical
 4   to objections that have been raised of a particularized nature
 5   on April 17th.  There may be others that will be sui generis
 6   that we won't be able to deal with, but I would be hopeful that
 7   we could get the vast majority of controversies heard on the
 8   19th of April.
 9              At that point, of course, it will be up to the Court
10   to act quickly, and who knows what will happen, but I will try.
11              Does that work for everyone?
12              MS. NORMAND:  Yes, your Honor.  Thank you.
13              MR. SCHULZ:  Yes, Judge.
14              THE COURT:  Very good.
15              MR. SCHULZ:  I think there was one open issue, which
16   is to set a timetable for hanging out there this question of
17   religion and weight.  If there is a categorical exemption, it
18   will be dealt with.
19              THE COURT:  If they do assert a categorical, it will
20   have to await my determination.  If they don't, then you say
21   when are they going to start searching for it.
22              MS. NORMAND:  Your Honor, if we attempt to meet the
23   schedule we have put forward as to the other categories, I
24   don't think we could begin searching for it until, effectively,
25   May 15th.
```

```
 1            THE COURT:  Tell you what we should do on that.  On
 2   April 28th, assuming that date is met, if no categorical
 3   exception has been made to weight and religion, then the
 4   parties should jointly call chambers and we will set a schedule
 5   for the search for those two.  I think it is reasonable not to
 6   require that to go forward until then.
 7            Anything else?
 8            MS. NORMAND:  No.  Thank you, your Honor.
 9            MR. SCHULZ:  Nothing further.
10            THE COURT:  Thank you very much.
11            (Adjourned)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```