MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: SARAH S. NORMAND (SN-2834)
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Telephone: (212) 637-2709
Facsimile: (212) 637-2702

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
ASSOCIATED PRESS,

       Plaintiff,

 - v.-

UNITED STATES DEPARTMENT
OF DEFENSE,

       Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ECF CASE**

SUPPLEMENTAL
DECLARATION OF
PAUL B. RESTER

06 Civ. 1939 (JSR)

Pursuant to 28 U.S.C. § 1746, I, Paul B. Rester, hereby declare:

1. As stated in my previous declaration dated May 10, 2006, I serve as the Director of the Joint Intelligence Group at Joint Task Force (JTF) Guantanamo, and I have served in that position since December 2005. In that position, my duties involve the day-to-day management of intelligence collection activities, including supervising the development and implementation of interrogation plans, insuring that intelligence obtained is analyzed and provided to persons requesting or needing the information, and other tasks purely related to strategic intelligence-gathering operations. Prior to this case, I have not been involved with responding to litigation involving Freedom of Information Act requests. I am not an attorney.

1

2. Photographs that clearly identify the face of Guantanamo detainees (present and former) have not been publicly released by the Department of Defense in the past and have been classified or treated as classified material, utilized only for official purposes within the Department of Defense. The current Classification Guide dated September 2005 provides that a photograph clearly identifying the face of a detainee at Guantanamo is classified SECRET when linked with other identifying information, until that detainee is transferred or released from Guantanamo. This distinction between photographs of past and present detainees was added when the Classification Guide was revised in September 2005. I was not at JTF Guantanamo when the Classification Guide was revised in September 2005, and I have no knowledge of the reason for this revision.

3. Within JTF Guantanamo, the responsibility for the development and the revision of the Classification Guide falls on the J-2, the staff officer within the military command structure responsible for intelligence and security. The J-2 developed the Classification Guide and the former JTF Commander, who was the Original Classification Authority, signed the revisions to it. The J-2 is completely separate from the Joint Intelligence Group. That officer does not work for me, nor I for him.

4. For this case, I was originally asked in May 2006 to provide a declaration to support the classification of the photographs of current Guantanamo detainees, as set forth in the September 2005 Classification Guide, and to explain the rationale for that classification. In my preparation of that declaration, the question of the Classification Guide's distinction between past and present detainees was not discussed with me or by me. My intent in that Declaration was to describe the rationale for the classification of the photos and how release of the photos would

compromise strategic intelligence operations. I was not asked to provide information about the process by which that classification was achieved or amended, nor could I have provided such information.

5. Separate and apart from this case, I did become aware that there was an error in the Classification Guide, specifically the Guide's failure to classify the photographs of past detainees, when the JTF Staff, under the direction of the J-2, began the process of conducting a review and revision of the entire Classification Guide, including that part pertaining to detainee photographs. This process commenced in early April 2006 and continues to this date. My staff and I have had inputs into that review and revision as part of the staffing process.

6. After the Associated Press argued that the Department of Defense's rationale for classifying photographs of current detainees would also apply to past detainees, I was asked for the first time in this case whether there was any substantive reason why photographs of current detainees are classified but photographs of former detainees are not. I advised that there was no substantive reason for that distinction and that the Classification Guide was in error. The Commander, JTF-GTMO, as the Original Classification Authority, does not have the authority to classify information after a request has been made for such information under the Freedom of Information Act. It is my understanding that this issue was then brought to the attention of senior officials within the Department of Defense.

7. The rationale for classification of photographs of current detainees also applies to the photographs of detainees who have been released or transferred from Guantanamo. As set forth in my prior declaration, photographs that identify current detainees are classified because their public release will have a chilling effect on human intelligence collection and substantially

3

impede the Department of Defense's ability to gather actionable intelligence information from detainees at Guantanamo. This rationale applies equally to photographs of former detainees. While former detainees are no longer subject to interrogation at Guantanamo, release of their photographs is likely to become known to detainees who remain here. If detainees believe that their photographs may be published upon their release, they will be less likely to cooperate and provide usable information to the Department of Defense.

8. The process of gaining actionable intelligence information from a human intelligence source is built around trust and confidentiality. No detainee or other intelligence source will provide information if they believe that, in so doing, they will be subjecting themselves, their families or their loved ones to danger of reprisals due to their cooperation. A key part of their comfort in providing information is a sense of anonymity. If identifying photos are released, even after active interrogation ceases, cooperating detainees lose any anonymity they might have had. In addition, even if a detainee is not cooperating with intelligence-gathering operations, a detainee who is clearly identified with a photograph may be in jeopardy of retaliation or reprisal from persons who believe, albeit incorrectly, that that detainee had cooperated with U.S. authorities. Therefore, the release of photos creates a fear, if not actual threat, of harm that would ultimately chill, if not defeat, valuable intelligence gathering at Guantanamo and worldwide.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: June 3, 2006

Paul B. Rester