**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ASSOCIATED PRESS,                                : | **ECF Case** |
|                                                         : | **No. 06 Civ. 1939 (JSR)** |
|                          **Plaintiff,**           : | |
|          - against -                               : | |
|                                                         : | |
| UNITED STATES DEPARTMENT OF              : | |
| DEFENSE,                                          : | |
|                                                         : | |
|                          **Defendant.**         : | |
|                                                         : | |

### SUR-REPLY IN OPPOSITION TO DEFENDANT'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
  David A. Schulz (DS-3180)
  Adam J. Rappaport
230 Park Avenue, Suite 1160
New York, NY 10169
(212) 850-6100

David H. Tomlin
THE ASSOCIATED PRESS
450 West 33rd Street
New York, NY 10001

*Counsel for The Associated Press*

Dockets.Justia.com

# TABLE OF AUTHORITIES

## CASES

*Abbotts v. Nuclear Regulatory Commission*, 766 F.2d 604 (D.C. Cir. 1985)................................2

*Ajluni v. FBI*, 1996 WL 776996 (N.D.N.Y. July 16, 1996).............................................2

*Associated Press v. United States Department of Defense*, 410 F. Supp. 2d 147
    (S.D.N.Y. 2006)..............................................................................................4, 5

*Caldarola v. County of Westchester*, 343 F.3d 570 (2d Cir. 2003) ...................................6

*Campbell v. United States Department of Justice*, 164 F.3d 20 (D.C. Cir. 1998).........................3

*Coldiron v. United States Department of Justice*, 310 F. Supp. 2d 44 (D.D.C. 2004)...................2

*Detroit Free Press, Inc. v. Department of Justice*, 73 F.3d 93 (6th Cir. 1996) .............................6

*Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374 (S.D.N.Y. 1998)................................1

*Donovan v. FBI*, 806 F.2d 55 (2d Cir. 1986) ..........................................................1, 3

*Gardels v. CIA*, 689 F.2d 1100 (D.C. Cir. 1982) ....................................................2

*Halpern v. FBI*, 181 F.3d 279 (2d Cir. 1999) ........................................................2

*Knipe v. Skinner*, 999 F.2d 708 (2d Cir. 1993)......................................................1

*McDonnell v. United States*, 4 F.3d 1227 (3d Cir. 1993) ............................................2

*Playboy Enterprises, Inc. v. Dumas*, 960 F. Supp. 710 (S.D.N.Y. 1997)......................................1

*Riverkeeper, Inc. v. Collins*, 359 F.3d 156 (2d Cir. 2004).............................................1

*Rosenfeld v. United States Department of Justice*, 57 F.3d 803 (9th Cir. 1995) .........................2

*United States Department of Justice v. Landano*, 508 U.S. 165 (1993)........................................1

*United States Department of Justice v. Reporters Committee For Freedom of Press*,
    489 U.S. 749 (1989)................................................................................5

**STATUTES**

5 U.S.C. § 552(a)(4)(B) ...........................................................................................................2

5 U.S.C. § 552(b)(1) ...............................................................................................................1

5 U.S.C. § 552(b)(6) ...............................................................................................................5

**MISCELLANEOUS**

Julian Barnes, *Army Manual To Skip Geneva Detainee Rule*, L.A. Times, June 5, 2006 ..............5

Andrew Selsky, *89 Guantanamo Detainees on Hunger Strike*, Associated Press,
    June 1, 2006 .........................................................................................................................5

In its reply memorandum, the Department of Defense ("DOD") argues for the first time that photographs of detainees already released or transferred from Guantanamo Bay are classified, and thus may be withheld from the Associated Press ("AP") under Exemption 1 of the Freedom of Information Act ("FOIA"), the national security exemption.  5 U.S.C. § 552(b)(1). Repeating the same contentions that were originally addressed only to photographs of current detainees, DOD's arguments still fail to establish how the public disclosure of an identifying photograph of each detainee can reasonably be expected to damage national security.  AP has no interest in undermining national security, but for the reasons set forth in AP's initial memorandum of law, DOD's conclusory argument against the release of a single identifying photograph of each detainee fails to satisfy its burden under FOIA.  *See* AP Opp. at 18-22

**A.      DOD Fails to Meet Its Statutory Burden Under Exemption 1**

DOD's new argument about photos of the former detainees fails for a number of reasons. As a threshold matter, courts typically refuse to consider such new arguments that are raised for the first time in a reply brief.  *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993); *Riverkeeper, Inc. v. Collins*, 359 F.3d 156, 166 n.11 (2d Cir. 2004); *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998), *aff'd without op.*, 173 F.3d 843 (2d Cir. 1999); *Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 720 (S.D.N.Y. 1997), *aff'd without op.*, 159 F.3d 1397 (2d Cir. 1998).  Even if the merits of DOD's new position are entertained, however, DOD fails to establish that photographs of former detainees can properly be withheld.

AP previously established the heavy burden imposed on DOD under Exemption 1, *see* AP Opp. at 19-20, a burden DOD's reply does not dispute.  To prevail under Exemption 1, of course, DOD bears the burden of demonstrating that the exemption properly applies.  *See Donovan v. FBI*, 806 F.2d 55, 60 (2d Cir. 1986), *limited on other grounds*, *U.S. Dep't of Justice*

*v. Landano*, 508 U.S. 165 (1993).  This burden requires DOD to show "'a logical connection'" between the release of the photographs and some likely damage to national security.  *McDonnell v. U.S.*, 4 F.3d 1227, 1243 (3d Cir. 1993) (citation omitted); *see also Abbotts v. Nuclear Regulatory Comm'n*, 766 F.2d 604, 606 (D.C. Cir. 1985); *Ajluni v. FBI*, 1996 WL 776996, at *5 (N.D.N.Y. July 16, 1996).  DOD must establish the potential damage to national security with "reasonable specificity" through affidavits and other admissible evidence.  *Halpern v. FBI*, 181 F.3d 279, 291-92 (2d Cir. 1999); *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 807 (9th Cir. 1995).  DOD's evidence is subject to *de novo* review by the Court, 5 U.S.C. § 552(a)(4)(B), and is not entitled to "blind deference," *Halpern*, 181 F.3d at 293; *see also Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 53 (D.D.C. 2004) ("No matter how much a court defers to an agency, its review is not vacuous.") (internal quotation and citations omitted).

Under these standards, the question for a court reviewing an agency's invocation of Exemption 1 is "whether on the whole record [the agency's] judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility."  *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982).  DOD's refusal to release an identifying photo of each detainee plainly does not.  DOD still fails to demonstrate with reasonable specificity any logical connection between disclosure of an identifying photograph and probable harm to national security.

DOD's reply and four new declarations add nothing to its opening arguments about the photos of detainees who have been held in captivity for nearly five years.  DOD simply restates its claim that releasing photos of the detainees will "substantially impede" its ability to gather useful intelligence from them.  Supplemental Declaration of Paul Rester ("Supp. Rester Decl.") ¶¶ 7-8; *see also* Declaration of Paul Rester ¶ 7.  DOD's premise remains that "persons who cooperate with capturing authorities are subject to reprisals by those about whom they may have

2

provided information," and therefore detainees "will not provide information if they believe that, in so doing, they will jeopardize their safety or that of their families and loved ones." *Id.* ¶ 5. However, DOD still fails to explain how releasing the photographs of *all* detainees could possibly reveal who is cooperating or increase the risk of retaliation against the cooperators in any meaningful way. DOD offers only the bald conclusion that detainees will be "less likely to cooperate" if they believe their photographs may be published. Supp. Rester Decl. ¶ 7. This is insufficient. *See Donovan*, 806 F.2d at 60 (rejecting application of Exemption 1 for failure to provide "reasoned discussion" of potential harm to national security); *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 31 (D.C. Cir. 1998) (finding affidavits that "failed to draw any connection between the documents at issue and the general standards that govern the national security exemption" conclusory and insufficient).

As AP previously demonstrated, there is no logical reason why uniformly releasing photographs of all detainees would subject any detainee to reprisals. *See* AP Opp. at 20-21. Releasing photographs of all the detainees, past and present, does not make it possible to identify those who may be cooperating, nor does it independently "permit" someone to retaliate against a cooperating detainee, because the name, date of birth, and other information for detainees are already public. Thus, even accepting DOD's assertion that a "key part of [a cooperating detainee's] comfort in providing information is a sense of anonymity," Supp. Rester Decl. ¶ 8, disclosure of the photographs would not cause the loss of any anonymity the detainees currently have. *See* AP Opp. at 11 (citing cases). DOD offers no logical basis as to how any increased risk of retaliation would reasonably be created by release of the photographs.

Unable to answer the illogic of its own position, DOD argues that it may nonetheless act in response to the irrational fears of detainees, *see* DOD Reply at 9, but again fails to present

evidence to establish that such irrational fears actually exist.  DOD claims that some detainees might have "perceived" but unfounded concerns about reprisals based upon the release of the photos that "would ultimately chill, if not defeat, valuable intelligence gathering," Supp. Rester Decl. ¶ 8, but offers no evidence in support of this speculative claim.  DOD presents no evidence that any detainee – cooperating or otherwise – actually harbors such unfounded concerns about reprisals, saying only it is possible that they *might* do so.  Such "thin and conclusory speculation" is insufficient to satisfy DOD's burden to withhold information under FOIA.  *Associated Press v. U.S. Dep't of Defense*, 410 F. Supp. 2d 147, 151 (S.D.N.Y. 2006) (rejecting adequacy of DOD's evidence under Exemption 6).  Moreover, if such undocumented speculation about a possible irrational reaction were sufficient to satisfy the requirements of Exemption 1, DOD's ability to withhold information about the detainees for national security reasons would be limitless.

DOD's submission also raises more questions than it answers about the basis for its belated decision to classify photos of former detainees.  DOD says its earlier decision not to classify photos of detainees who have been released from Guantanamo was an "error," Supp. Rester Decl. ¶ 5, but offers no explanation about the source of the "error."  Apparently, former JTF Commander Jay Hood previously failed to see the potential for damage to national security that DOD belatedly attempts to portray here.

In short, DOD's arguments still fail to pass the test of "reasonableness, good faith, specificity and plausibility."

## B.    DOD Provides No Other Basis To Withhold Photographs of Former Detainees

In expanding its Exemption 1 theory to photos of former detainees, DOD also misstates the grounds for withholding them under Exemption 6.  Exemption 6 requires the DOD to show that disclosure "*would* constitute a *clearly unwarranted* invasion of personal privacy," 5 U.S.C. §

552(b)(6) (emphasis added), not merely that disclosure "could subject the detainees to embarrassment or other unwanted attention," DOD Reply at 11.  This requires DOD to establish that the detainees' privacy interests outweigh the public interest in disclosure, something DOD does not, and cannot do.[1]

DOD provides no evidence that the *detainees* believe that disclosure of their photographs would expose them to embarrassment or unwanted attention.  Instead, DOD faults AP for identifying only a "handful" of released detainees who have made plain their absence of any concern about public identification.  *See* DOD Reply at 14.  It is DOD, however, with the burden of proof, and AP originally identified only seven examples due to space constraints.  Many more exist.  *See, e.g.*, http://www.cageprisoners.com/prisoners.php?location=Guantanamo (showing photographs of dozens of released detainees).  It is also hard to conceive that detainees who have repeatedly engaged in hunger strikes in an effort to bring public attention to their plight (including one begun just last week, *see* Andrew Selsky, *89 Guantanamo Detainees on Hunger Strike*, Associated Press, June 1, 2006) would not want public attention.

Because DOD fails to demonstrate the existence of any privacy interest in the photographs, there is nothing to balance against the public interests in disclosure.  *See Associated Press*, 410 F. Supp. 2d at 157.  But, DOD equally fails to refute the value of releasing the photographs to shed light for citizens on "'what their government is up to.'"  *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989) (citation omitted).

---

[1] DOD continues to argue that the detainees' privacy interests in this case should be measured by the Geneva Conventions, rather than the reasonable privacy expectations of the detainees under the circumstances, yet concedes that the Geneva Conventions do not govern its treatment of the detainees.  Indeed, it was reported just this week that DOD has decided to drop from the new Army Field Manual the Geneva Convention's ban on "humiliating and degrading treatment" of detainees during interrogation.  *See* Julian Barnes, *Army Manual To Skip Geneva Detainee Rule*, L.A. Times, June 5, 2006, at A1.

DOD asserts that the public interests in assessing claims of mistaken identity or detecting detainees who may have provided an alias "are satisfied by the substantial other identifying information," Reply at 16, an argument explicitly rejected by the Sixth Circuit in analogous circumstances, *see Detroit Free Press, Inc. v. Dep't of Justice*, 73 F.3d 93, 98 (6th Cir. 1996). Disclosure is in the public interest precisely because identifying images might "startlingly reveal the circumstances surrounding an arrest and initial incarceration of an individual in a way that written information cannot." *Id.*; *see also Caldarola v. County of Westchester*, 343 F.3d 570, 576 & n.3 (2d Cir. 2003).

## CONCLUSION

For each and all of the foregoing reasons, and for the reasons set forth in AP's initial memorandum of law, the Court should deny defendant's motion for summary judgment, and enter such other and further relief as to the Court seems proper.

Dated:    June 8, 2006                    Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.


By:    /s/ David A. Schulz
       David A. Schulz (DS-3180)
       Adam J. Rappaport

230 Park Avenue, Suite 1160
New York, NY 10169
(212) 850-6100

David H. Tomlin
The Associated Press
450 West 33rd Street
New York, NY 10001

*Counsel for The Associated Press*