**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street, Third Floor*
*New York, New York 10007*

July 10, 2006

BY HAND

Honorable Jed S. Rakoff
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

        Re:    Associated Press v. United States Department of Defense,
                06 Civ. 1939 (JSR)

Dear Judge Rakoff:

      We write respectfully in the above-referenced action brought pursuant to the Freedom of Information Act to provide the Court with a redacted supplemental declaration from Paul B. Rester, Director of the Joint Intelligence Group at Joint Task Force ("JTF") Guantanamo, in further response to questions posed by the Court at the oral argument in this matter on June 9, 2006. The complete, unredacted declaration is classified and is being stored in a secure location. The Government will make the classified declaration available for the Court's review ex parte and in camera, at the Court's convenience.

      We have also enclosed two declarations submitted by the plaintiffs in ACLU v. DOD, 04 Civ. 4151 (AKH), to provide additional information regarding the view of the International Committee of the Red Cross ("ICRC") with respect to the public disclosure of identifying photographs of military detainees.

The Second Supplemental Rester Declaration

      Director Rester's Second Supplemental Declaration (the "Declaration") responds to several points raised by the Court, and by counsel for AP, at oral argument.

      First, the Declaration makes clear that, contrary to AP's speculative and unsupported claim, detainees at JTF Guantanamo continue to provide intelligence information that directly aids the Global War on Terrorism. See Second Supp. Rester Decl. ¶¶ 4-7. As Director Rester explains, even individuals who have been detained for a period of years continue to possess and provide information that is useful to the U.S. Government and its allies. Id. ¶ 7.

Dockets.Justia.com

Hon. Jed S. Rakoff
July 10, 2006
Page 2

    Second, the Declaration further explains the basis for classification of identifying detainee photographs: that official public disclosure of such photographs would exacerbate the detainees' real and perceived fears of reprisal and thus reduce the likelihood that detainees will cooperate in intelligence-gathering efforts. As a threshold matter, the Declaration establishes that release of photographs would allow conclusive identification of detainees in a manner that disclosure of names and other information does not. Id. ¶ 10. Such identification would facilitate reprisals in at least two ways. As the Court suggested, see June 9, 2006 Transcript ("Tr.") at 20-21, upon release from JTF Guantanamo, detainees are likely to be questioned by associates to determine whether or not they cooperated with Department of Defense ("DOD") interrogators. Second Supp. Rester Decl. ¶ 11. Further, to the extent that intelligence information formerly held by a limited number of people is obtained from detainees and subsequently used by the U.S. Government, release of photographs may allow terrorists to identify particular detainees as sources of information. Id. ¶ 12. Disclosure of identifying detainee photographs is thus likely to facilitate reprisals against detainees and their families. Id. ¶¶ 8-12.

    Even apart from the increased likelihood of reprisals, public release of official U.S. Government photographs of detainees would severely and materially compromise the process of gathering intelligence from detainees. Id. ¶ 13-15. As Director Rester explains, the process of gathering intelligence from detainees depends on the interrogators' ability to gain the detainees' trust. Id. ¶ 14. Detainees at JTF Guantanamo have specifically expressed concerns to interrogators that they or their families will be subject to reprisals if they cooperate. Id. ¶ 13. Providing credible assurances of confidentiality is absolutely critical to a successful intelligence-gathering operation. Id. ¶ 14a. As set forth in detail in the Declaration, if the U.S. Government releases official photographs confirming the identities of detainees at JTF Guantanamo, the interrogators will be hampered in their ability to provide, and the detainees will be less likely to believe and act upon, such assurances. See id. ¶ 14. Accordingly, public release of the requested photographs would substantially impair DOD's ability to gather useful intelligence information from detainees at JTF Guantanamo and elsewhere. Id. ¶¶ 13-15; see also Rester Decl. ¶¶ 4-9; Supp. Rester Decl. ¶¶ 7-8.

    Third, the Declaration establishes that official release by the U.S. Government of identifying detainee photographs -- as opposed to unofficial release of photographs of detainees that may have been posted on a private internet website -- would cause damage to national security. Contrary to the estimate of AP's counsel at oral argument, see Tr. at 23-24; AP Opp. at 21, the website "cageprisoners.com" does not contain photographs of "several hundred" of the detainees. As of today's date, we counted only 134 photographs of alleged detainees posted on that website, a fraction of the 759 detainees who have been held by DOD at JTF Guantanamo. The vast majority of these photographs, moreover, obviously were not taken while the subjects were in detention, and thus could not confirm the identities of the detainees at JTF Guantanamo. Finally, and most importantly, photographs posted by family members or other third parties on a private website do not provide official confirmation of detainee identities. See DOD Reply at 9 (citing cases). As explained in Director Rester's Declaration, public release of official photographs by the U.S. Government, the very entity that is attempting to elicit the detainees' cooperation, would both facilitate reprisals against detainees (and their families and associates)

Hon. Jed S. Rakoff
July 10, 2006
Page 3

and inhibit cooperation by detainees. Second Supp. Rester Decl. ¶¶ 8-15.

Finally, as set forth in the Declaration, the photographs are properly classified categorically. Although the photographs were at one time classified FOR OFFICIAL USE ONLY (FOUO) to CONFIDENTIAL, no review was undertaken to determine the particular classification level of such photographs, either individually or as a group, and the photographs were treated as classified material and used only for official DOD purposes. Second Supp. Rester Decl. ¶¶ 16-19. The photographs, as a group, are now classified at the SECRET level. England Decl. ¶¶ 4-6. Additionally, as Director Rester explains, photographs of detainees are properly classified on a categorical, rather than a photograph-by-photograph, basis because release of even a small subset of the requested photographs would cause harm to national security. Second Supp. Rester Decl. ¶ 20. Further, it plainly would not be appropriate to classify only the photographs of those detainees who have in fact cooperated with the U.S. Government, because to do so would single out those detainees and officially acknowledge and confirm their cooperation, causing even greater harm to intelligence sources and methods. Id.

DOD has thus satisfied its burden of demonstrating a reasonably specific and logical justification for classification of the photographs, and the Court accordingly should defer to DOD's considered judgment as to the impact of disclosure on national security. See DOD Br. at 6-7, 11; DOD Reply at 9-10.

The Declarations of Marco Sassoli and Scott Horton, Submitted in ACLU v. DOD

During the oral argument on June 9, the Court inquired about the position of the ICRC with regard to whether the Geneva Conventions bar disclosure of identifying photographs of detainees, as distinguished from photographs that depict detainees in humiliating or degrading circumstances. See Tr. at 12-16. As noted in the Declaration of Richard B. Jackson, the ICRC has generally interpreted Article 13 of the Geneva Convention Relative to the Treatment of Prisoners of War ("GPW") and Article 27 of the Geneva Convention Relative to the Protection of Civilian Persons in Time of War ("GC") as requiring parties to avoid publication of identifying photographs of detainees. Jackson Decl. ¶ 15 & nn.8-9.

The Sassoli and Horton declarations, provided herewith, were submitted in opposition to DOD's motion for summary judgment in ACLU v. DOD, 04 Civ. 4151 (AKH), in which DOD withheld the so-called "Darby photographs" of detainees at Abu Ghraib prison pursuant to FOIA Exemptions 6, 7(C), and 7(F). In that case, DOD argued that photographs of military detainees implicate strong privacy interests, as reflected in the Geneva Conventions and other sources, and that the Darby photographs were therefore exempt from disclosure under Exemptions 6 and 7(C) even if identifying characteristics of specific detainees were redacted. Plaintiffs, the ACLU and others, argued in response that the photographs did not implicate privacy interests if identifying characteristics were redacted, and thus agreed that redaction of faces and other identifying characteristics was appropriate. The plaintiffs offered the Sassoli and Horton declarations in support of that argument. Judge Hellerstein ultimately concluded that disclosure of the images with identifying characteristics redacted would not violate the Geneva Conventions, and thus ordered the redacted images disclosed. ACLU v. DOD, 389 F. Supp. 2d

Hon. Jed S. Rakoff
July 10, 2006
Page 4

547, 572 (S.D.N.Y. 2005). Judge Hellerstein further ruled that, as to certain photos and one video, "where the context compelled the conclusion that individual recognition could not be prevented without redaction so extensive as to render the images meaningless," such images were properly withheld. Id.

While the Government did not agree with the conclusion that the photographs at issue in ACLU v. DOD could be redacted sufficiently to protect the privacy interests of the detainees at issue, the Sassoli and Horton declarations further demonstrate the ICRC's view that the Geneva Conventions generally prohibit publication of identifying images of military detainees. Mr. Sassoli, who worked with the ICRC from 1985 to 1997 (including as deputy head of its legal department), stated in his declaration: "Article 13 of the Third Geneva Convention and Article 27 of the Fourth Geneva Convention have been construed by states party and by the ICRC to prohibit the dissemination of photographs in which prisoners of war or protected persons are individually identifiable." Sassoli Decl. ¶ 9; see also id. ¶ 13 (noting that "[t]he Geneva Conventions' proscription against exposing prisoners to 'insult and public curiosity' reflects a concern for the prisoner as individual").

Mr. Horton, who "frequently work[ed] alongside the [ICRC] for twenty years in nations across Eurasia and in West Africa," agreed that "photography of detainees may in some circumstances be forbidden by the Conventions and that the dissemination of such photography may be properly restricted. This is particularly true of photographs that depict identifiable prisoners." Horton Decl. ¶ 13. Mr. Horton explained that dissemination of photographs of individually identifiable prisoners can cause embarrassment to the prisoners who are depicted and can endanger the members of their families, who may be subject to reprisal. Id.

In describing U.S. practice with regard to photographs of military detainees, Mr. Horton noted the provisions of Army Regulation 190-8, DOD's guidance regarding photographs of Guantanamo detainees, and DOD guidelines for embedded media in Iraq, all of which prohibit publication of identifying images of detainees without reference to whether such images are otherwise humiliating or degrading. See id. ¶¶ 18-20; see also Jackson Decl. ¶¶ 6-8 & nn.3-4. Mr. Horton also cited a 2004 Congressional Research Service report, which correctly observed that DOD "interprets the provision [GPW Article 13] to protect POWs from being filmed or photographed in such a manner that viewers would be able to recognize the prisoner." Horton Decl. ¶ 21 (citing Jennifer K. Elsea, Congressional Research Service Report for Congress: Lawfulness of Interrogation Techniques under the Geneva Conventions (Sept. 8, 2004), at CRS-19) (internal quotation marks omitted). Mr. Horton determined that "[t]he established United States practice on this issue is consistent with the view of the ICRC. . . . '[T]he ICRC considers the use of any image that makes a prisoner of war individually recognizable to be a violation' of the Conventions.'" Id. ¶ 24 (quoting Elsea, supra, at CRS-19) (emphasis added).

Thus, the Sassoli and Horton declarations, as well as the Congressional Research Service report cited by Mr. Horton (a copy of which is also submitted herewith), provide further support for DOD's argument that both the U.S. Government and the ICRC have historically interpreted the Geneva Conventions as prohibiting the dissemination of identifying images of

Hon. Jed S. Rakoff
July 10, 2006
Page 5

military detainees.  The detainees therefore have significant and well-established privacy interests worthy of protection under FOIA Exemption 6.  <u>See</u> DOD Br. at 13-25; DOD Reply at 10-18.

<u>Conclusion</u>

      For all of these reasons, and the reasons stated in the Government's motion papers and at oral argument in this matter, we respectfully request that the Court grant the Government's motion for partial summary judgment.

      Respectfully,

      MICHAEL J. GARCIA
      United States Attorney

By:    <u>s/ Sarah S. Normand</u>
      SARAH S. NORMAND
      Assistant United States Attorney
      Tel. No.: (212) 637-2709
      Fax No.: (212) 637-2702

Encs.

cc:    David A. Schulz, Esq.
      Levine Sullivan Koch & Schulz, LLP
      230 Park Avenue
      New York, New York 10169
      <u>BY EMAIL</u>