# LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

230 PARK AVENUE, SUITE 1160
NEW YORK, NEW YORK 10169

(212) 850-6100
FACSIMILE (212) 850-6299

1050 17TH STREET, N.W., SUITE 800, WASHINGTON, D.C. 20036-5514
(202) 508-1100   FACSIMILE (202) 861-9888

2112 WALNUT STREET, THIRD FLOOR, PHILADELPHIA, PA 19103
(215) 988-9778   FACSIMILE (215) 988-9750

SETH D. BERLIN
JAY WARD BROWN
JAMES E. GROSSBERG*
ASHLEY I. KISSINGER*
ELIZABETH C. KOCH*
LEE LEVINE*
ROBERT PENCHINA
CELESTE PHILLIPS*
DAVID A. SCHULZ
NATHAN SIEGEL
GAYLE C. SPROUL
MICHAEL D. SULLIVAN*

NICOLE A. AUERBACH
JEANETTE MELENDEZ BEAD*
MICHAEL BERRY*
CHAD R. BOWMAN*
AUDREY CRITCHLEY*
THOMAS CURLEY*
ADAM J. RAPPAPORT*
ALIA L. SMITH

*Not Admitted In New York

WRITER'S DIRECT DIAL
(212) 850-6103

July 17, 2006

Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1340
New York, New York 10007

    Re:    *Associated Press v. Department of Defense*, No. 06 Civ. 1939 (JSR)

Dear Judge Rakoff:

    The Associated Press ("AP") respectfully submits this letter in response to the supplemental submission of the Department of Defense ("DOD") in the above-captioned Freedom of Information Act ("FOIA") action. Parts of DOD's response to the questions posed by the Court are redacted, but those that have been made public again fail to demonstrate that photographs of Guantanamo Bay detainees may be withheld under either Exemption 1 or Exemption 6.

### The Supplemental Submission Does Not Satisfy DOD's Burden Under Exemption 1

    As with DOD's previous submissions, this one does not meet the government's statutory burden under Exemption 1 to show, with "reasonable specificity," "a logical connection" between the release of the photographs and some likely damage to national security. *Halpern v. FBI*, 181 F.3d 279, 291-92 (2d Cir. 1999); *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 807 (9th Cir. 1995); *McDonnell v. United States*, 4 F.3d 1227, 1243 (3d Cir. 1993). Of course, the additional evidence offered by DOD, including those portions submitted *ex parte*, remains subject to *de novo* review by the Court, and is not entitled to "blind deference." *Halpern*, 181 F.3d at 293. The question for the Court continues to be "whether on the whole record [the agency's] judgment

**LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.**

Hon. Jed S. Rakoff
July 17, 2006
Page 2

objectively survives the test of reasonableness, good faith, specificity, and plausibility." *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982).

The public portions of the Second Supplemental Declaration of Paul Rester ("Second Supp. Rester Decl.") do not provide specific evidence to support DOD's contention that releasing photographs of the detainees would facilitate retaliation against them and exacerbate their perceived fears of retaliation such that national security would be damaged. As AP previously demonstrated, there is no logical reason that uniformly releasing photographs of all detainees would facilitate reprisals against any detainee. *See* AP's Sur-Reply in Opposition to Defendant's Motion for Partial Summary Judgment at 2-3. DOD's public supplemental response offers no contrary evidence. DOD first speculates that reprisals would be facilitated because associates of detainees "are likely to" seek them out after they have been released, and "may inflict physical or mental harm or even torture" to learn whether they cooperated. Second Supp. Rester Decl. ¶ 11. It also hypothesizes that if intelligence information held by a limited number of people is used by the U.S. government, "it may be possible for terrorists to identify cooperators." *Id.* ¶ 12. Such conclusory speculation is insufficient to satisfy DOD's burden under FOIA.

DOD asserts that some detainees have voiced concerns about retaliation from other detainees, and that some have been threatened against cooperating by other detainees. *See id.* ¶¶ 9, 13. This, however, does not demonstrate in any respect that release of detainee photographs would facilitate reprisals. To the contrary, the detainees making threats already know exactly what the suspected cooperators look like.

Unfortunately, such thin and illogical arguments are all that is in the public record in support of DOD's claim that release of the photographs would facilitate reprisals. Nor do the public portions of its supplemental submission offer any meaningful proof that the act of releasing detainee photographs would exacerbate perceived fears of detainees in a manner that would cause them to stop cooperating. It bears repeating that DOD has identified all 759 detainees by name, citizenship, hometown, and date of birth. If identifying detainees makes them fear reprisals, and their fear inhibits them from cooperating, this impact should have been strongest after DOD identified them publicly. DOD, however, asserts just the opposite: the government continues to gain "useful intelligence information from detainees on nearly a daily basis." Second Supp. Rester Decl. ¶ 7; *see also id.* ¶¶ 4-6.[1] DOD presents no specific, plausible reason to conclude that

---

[1] DOD identifies one instance in which a cooperating detainee said that other detainees threatening him read aloud a newspaper article that provided his full name and his statements to the Combatant Status Review Tribunal. *See* Second Supp. Rester Decl. ¶ 9d. While it is surprising the DOD would permit detainees access to newspaper articles, DOD has not provided any public evidence that this detainee stopped cooperating due to this incident. Indeed, DOD has not offered public proof that any of the concerns voiced by detainees about retaliation, or any of the threats from other detainees, have caused them to stop cooperating.

**LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.**

Hon. Jed S. Rakoff
July 17, 2006
Page 3

identifying the detainees collectively through a single photograph of each would have any different effect on their perceived fears or willingness to cooperate.

In short, DOD still has not shown with "reasonable specificity" that there is a "logical connection" between releasing detainee photographs and harm to national security.

### The Supplemental Submission Does Not Support DOD's Exemption 6 Claim

Throughout this litigation, DOD has maintained that the Geneva Conventions are properly interpreted to prohibit the release of identifying photographs of detainees, and that this demonstrates the detainees' privacy interest in them. In response to the Court's inquiry about the position of the International Committee of the Red Cross ("ICRC") on this issue, DOD now provides two declarations previously submitted in *American Civil Liberties Union v. Department of Defense*, No. 04 Civ. 4151 (AKH), a FOIA case involving the so-called "Darby photographs" depicting abuse of detainees at Abu Ghraib prison. These declarations, however, support the conclusion that the Geneva Conventions *do not* prohibit the release of all photographs of detainees. *See* Declaration of Scott Horton ("Horton Decl.") ¶ 11 ("The Geneva Conventions contain no *per se* prohibition on the taking or disseminating of photographs of prisoners of war or protected persons."); Gordon Risius & Michael A. Meyer, *The Protection of Prisoners of War Against Insults and Public Curiosity*, Int'l Rev. Red Cross (July-Aug. 1993), at 289, 292 (noting that Article 13 "contains no provisions specifically regulating the circumstances in which prisoners of war can be photographed," and that it "does not draw a clear dividing line between what is acceptable and what is a breach of its provisions") (Exhibit A to Horton Decl.).

Those declarations addressed whether the Geneva Conventions would prohibit release of the Darby photographs, which stand in stark contrast to the images at issue here. The Darby photographs graphically showed Abu Ghraib detainees being abused and humiliated. *See ACLU v. DOD*, 389 F. Supp. 2d 547, 568-74 (S.D.N.Y. 2005). As a result, had they been released without identifying characteristics redacted, they would have been much more likely to violate the Geneva Conventions' prohibition "against insults and public curiosity." DOD does not contend that the photographs it seeks to withhold here show degrading or abusive treatment of detainees. Rather, they appear to be "head shots" of the detainees used for identification purposes. Accordingly, the declarations submitted in *American Civil Liberties Union v. Department of Defense* are inapposite, and the Geneva Conventions do not bar their release or show that the detainees have a privacy interest in them.[2]

---

[2] Even in this different context, Judge Hellerstein rejected DOD's claim that ICRC had taken the position that the "Third Geneva Convention forbids publishing images that 'show prisoners of war in degrading or humiliating positions *or allow the identification of individual*

**LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.**

Hon. Jed S. Rakoff
July 17, 2006
Page 4

    Even if DOD could show that the detainees have some interest keeping the photographs private, that interest, as in *American Civil Liberties Union v. Department of Defense*, would be overcome by the public interest in "'hold[ing] the governors accountable to the governed.'" 389 F. Supp. 2d at 574 (citation omitted). A number of detainees have claimed that they are victims of mistaken identity, and whether DOD adequately investigated these assertions is undoubtedly of public interest. *See Detroit Free Press, Inc. v. Dep't of Justice*, 73 F.3d 93, 98 (6th Cir. 1996). The photographs also may depict the physical condition of the detainees, most likely at the time of their arrival at Guantanamo. *See id.*

    For these reasons, and for the reasons set forth in AP's previous submissions, the Court should deny DOD's motion for summary judgment.

                                  Respectfully submitted,

                                  /s/ David A. Schulz
                                  David A. Schulz

cc:    Sarah Normand, Esq.

---

POWs.'" *ACLU v. DOD*, 389 F. Supp. 2d at 574 (citation omitted) (emphasis added) (noting that DOD's assertion was "without supporting documentation").