```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
ASSOCIATED PRESS,                        :
                                         :
            Plaintiff,                   :   06 Civ. 1939 (JSR)
                                         :
       -v-                               :   OPINION AND ORDER
                                         :
UNITED STATES DEPARTMENT OF DEFENSE,     :
                                         :
            Defendant.                   :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

This is another chapter in the prolonged efforts of the Associated Press ("AP") to obtain from defendant Department of Defense ("DOD"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., basic information about the individuals housed in the detention facility at Guantanamo Bay, Cuba. See Associated Press v. U.S. Dep't of Def., 410 F. Supp. 2d 147 (S.D.N.Y. 2006) ("AP I"); Associated Press v. U.S. Dep't of Def., -- F. Supp. 2d. --, 2006 WL 2707395 (S.D.N.Y. September 20, 2006) ("AP II"). The immediate dispute, however, raises, for the first time, issues of national security.

Pursuant to prior orders of the Court and to consensual agreements between the parties, DOD has now produced all or most of the names, internment serial numbers, citizenship information, and dates and places of birth of the detainees held at Guantanamo, see Declaration of Karen L. Hecker dated May 11, 2006 ("Hecker Decl.") ¶ 6-7. DOD has declined, however, to disclose photographs identifying past and present detainees, as well as information as to each detainee's weight and height. Pending now before the Court is a summary judgment motion

brought by defendant that, both sides agree, will definitively resolve whether these two categories of information should be disclosed or not.

While DOD seeks to withhold both categories of information on the basis of FOIA Exemption 6, 5 U.S.C. § 552(b)(6), discussed, infra, as to the photographs DOD also relies on FOIA Exemption 1, 5 U.S.C. § 552(b)(1), which exempts from disclosure records that are

> (A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order.

5 U.S.C. § 552(b)(1). The Executive Order here pertinent is Executive Order 12958, as amended,[1] which permits a record to be classified if it concerns, inter alia, "intelligence sources or methods" and if "the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security." Executive Order 12958 § 1.1(a). Pursuant to that Order, the photographs of past and present detainees are presently classified at the "SECRET" level. See Declaration of Paul B. Rester dated May 10, 2006 ("Rester Decl.") ¶¶ 1, 3, 8-9.

In the portion of DOD's submissions that are not under seal, Paul Rester, Director of the Joint Intelligence Group, JTF-Guantanamo, and formerly the officer in charge of DOD interrogations at Guantanamo, justifies this classification by noting, first, that every detainee is a potential source of intelligence:

---

[1] Executive Order 12958 was amended by Executive Order 13292. See 68 Fed. Reg. 15315 (March 25, 2003). All citations here are to the Executive Order as amended.

> Because of the nature of terrorist organizations, such as al Qaida, because of terrorist organizations' methods of operation, and because of the affiliations between terrorist organizations, human intelligence is the most effective source of actionable information for the anticipation and interdiction of terrorist activity. Because of the value of human intelligence, each detained enemy combatant, whether detained at JTF-Guantanamo, in Afghanistan or in Iraq, is a potential source of valuable information.

Rester Decl. ¶ 4. Rester further notes that, obviously, the detainees will not provide useful intelligence if they fear retaliation against themselves or their families:

> Cooperating subjects simply will not provide information if they believe that, in so doing, they will jeopardize their safety or that of their families and loved ones. It is well documented in public sources, and consistent with my extensive experience, that persons who cooperate with capturing authorities are subject to reprisals by those about whom they may have provided information. In fact, persons who are captured and detained may not have cooperated at all, but if entities about whom they possess information believe that such persons have cooperated or are considering cooperating, reprisals can and do occur. These concerns are particularly acute in the case of persons who are linked terrorist activity.

Id. ¶ 5. On the basis of these considerations and his extensive experience, Rester then argues that disclosure of the detainees' photographs will increase the risk of retaliation because "release of photographs coupled with names (which may be common names) would specifically identify each detainee in a way that a release of names and other biographical information does not," id. ¶ 7, and that, in any event, many detainees believe that harm will ensue from such disclosure and will fail to cooperate. Id. It is on these grounds, he states, that DOD made its determination that disclosure of the photographs reasonably could be expected to result in serious damage to the national security. See id. ¶¶ 7-8.

In reviewing an agency's assertion of Exemption 1, "courts should accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record, albeit without relinquishing their independent responsibility" to review those determinations de novo. Goldberg v. U.S. Dep't of State, 818 F.2d 71, 77 (D.C. Cir. 1987) (internal quotations omitted). As always, "the burden is with the agency to justify nondisclosure," Donovan v. F.B.I., 806 F.2d 55, 60 (2d Cir. 1986), but "courts must accord 'substantial deference' to agency affidavits that implicate national security." Lawyers Committee for Human Rights v. INS, 721 F. Supp. 552, 561 (S.D.N.Y. 1989) (Walker, J.) (quoting Donovan, 806 F.2d at 60); see also Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir. 1999) ("Mindful that courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns."); Doherty v. Dep't of Justice, 775 F.2d 49, 52 (2d Cir. 1985). An agency invoking Exemption 1 is entitled to summary judgment when the affidavits describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1982); see also Doherty, 775 F.2d at 52; Diamond v. F.B.I., 707 F.2d 75 (2d Cir. 1983).

What was arguably absent from DOD's original submission to this Court on this issue was the "reasonably specific detail" supporting Rester's assertions. Accordingly, the Court gave DOD an opportunity to

submit supplemental evidence, filed under seal, which the Court reviewed <u>ex parte</u>. Based on that review and the particularized detail offered therein, the Court is satisfied that, as argued in the non-sealed portion of the Second Supplemental Declaration of Paul B. Rester, sworn to July 8, 2006 ("Second Supp. Rester Decl."), various detainees at Guantanamo continue to provide important intelligence, <u>see</u> Second Supp. Rester Decl. ¶¶ 4-7; release of the photos would allow conclusive identification of some such detainees in a manner that disclosure of names and other identifying information would not, <u>see</u> <u>id.</u> ¶ 10; official public disclosure of such photographs would both increase the risk of retaliation against the detainees and their families and exacerbate the detainees' fears of reprisal, thus reducing the likelihood that detainees would cooperate in intelligence-gathering efforts, <u>see</u> <u>id.</u> ¶¶ 8-12; and there remains a strong national security interest in withholding these photographs even though there has been limited unofficial disclosure of detainee photographs, <u>see</u> <u>id.</u> ¶¶ 8-15.

Accordingly, the Court hereby grants DOD's motion to withhold the photographs of past and present detainees pursuant to Exemption 1.

Although, in view of this conclusion, the Court need not reach the question of whether the withholding of the photographs may also be justified under Exception 6, the scope and application of Exemption 6 must be considered with respect to the withholding of detainees' height and weight information, which DOD seeks to justify solely on the basis of Exemption 6.

Exemption 6 allows an agency to withhold "personnel and medical files the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy," 5 U.S.C. § 552(b)(6). The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information," United States Dep't of State v. Washington Post Co., 456 U.S. 595, 599 (1982). As the detainees' weight and height information is contained in medical records, see Hecker Decl. ¶ 10, Exemption 6 requires the Court to "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." United States Dep't of State v. Ray, 502 U.S. 164, 175 (1991) (internal quotations omitted).

FOIA embodies a "a general, firm philosophy of full agency disclosure," A. Michael's Piano, Inc. v. FTC, 18 F.3d 138, 141 (2d Cir. 1994), and "'the Government's burden in establishing the requisite invasion of privacy to support an Exemption 6 claim is heavier than the standard applicable to [certain other exemptions],' United States Dep't of State v. Ray, 502 U.S. 164, 172 (1991), because the Government must show that disclosure 'would constitute' (as opposed to 'could reasonably be expected to constitute') a 'clearly unwarranted' (as opposed to simply 'unwarranted') invasion of personal privacy. United States Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 756 (1989)." AP I, 410 F. Supp. 2d at 150.

In prior cases involving height and weight information, courts have frequently found that the privacy interest in the non-disclosure of this information is quite weak. Cf. Lissner v. United States Customs Serv., 241 F.3d 1220, 1224 (9th Cir. 2001) (holding that "[a] general physical description of the officers, including their height, weight,

-6-

eye color, and ethnicity, implicates no personal privacy interest, particularly because the officers' identities have already been released by Customs"); Keys v. United States Dep't of Justice, 830 F.2d 337, 348 (D.C. Cir. 1987) (holding that "it is hard to see how the general background information about him in that paragraph -- age, sex, weight, height, eye and hair color -- could have measurably invaded his privacy"); Dobronski v. FCC, 17 F.3d 275 (9th Cir. 1994) (ordering release of sick release records even though they "could contain information regarding the reasons for an employee's sick leave, or the state of her health").  In the instant case, DOD has not made any particularized showing that disclosure of this information is likely to lead to retaliation, harassment, or embarrassment.  Indeed, the immediate impetus for AP's request for this information – i.e., investigation of detainees' hunger strikes – suggests that at least some detainees would welcome having this information disclosed.

In any event, there is a clear public interest in obtaining this information so as to assess, not only DOD's conduct with respect to the hunger strikes at Guantanamo, but more generally DOD's care and (literally) feeding of the detainees.  Obviously, weight information only takes on significance when paired with the corresponding information on height, hence the need for both.  As the Supreme Court has stated, "the core purpose of the FOIA . . . is contributing significantly to public understanding of the operations or activities of the government," United States Dep't of Defense v. Fed. Labor Rel. Auth., 510 U.S. 487, 495 (1994) (internal quotations omitted) (quoting United States Dep't of Justice v. Reporters Comm., 489 U.S. 749, 775

(1989)). The information here requested plainly addresses this purpose and more than outweighs the modest privacy interest, if any, here proffered by DOD.

In sum, DOD's motion is granted as to the detainee photographs and denied as to the detainee height and weight information. DOD is hereby directed to furnish the latter information to AP by no later than December 11, 2006.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       November 27, 2006